IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COREY N. JONES,                          *
                                         *
              Plaintiff,                 *
                                         *
        vs.                              *        Civil Action No.   ADC-18-3002
                                         *
THE BALTIMORE CITY BOARD                 *
OF SCHOOL COMMISSIONERS                  *
                                         *
              Defendant.                 *
                                         *
* * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant Baltimore City Board of School Commissioners ("Defendant") moves this Court for summary judgment (the "Motion") (ECF No. 37). Defendant seeks a ruling from the Court that it did not discriminate or retaliate against Plaintiff Corey Jones ("Plaintiff") in violation of Title VII of the Civil Rights Act of 1964 or discriminate against him in violation of Md. Code Ann., State Gov't § 20-606(a) and (f). Plaintiff filed an opposition to Defendant's Motion (ECF No. 50).

After considering the Motion and response thereto, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md.2018). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds there exists genuine issues of material fact in Plaintiff's retaliation claim. Accordingly, the Court will GRANT IN PART and DENY IN PART Defendant's Motion (ECF No. 37).

## FACTUAL BACKGROUND

This lawsuit arises out of Plaintiff's allegations of gender discrimination and retaliation against his employer, the Baltimore City Board of School Commissioners ("BCBSC"), in violation

of Title VII of the Civil Rights Act and Md. Code Ann., State Gov't § 20-606(a) and (f). The facts are viewed in a light most favorable to Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Plaintiff's claims stem from a series of events involving various employees of the Baltimore City Public School System, beginning in August 2015 through the end of 2019. *See* ECF No. 1. Plaintiff is a retired employee of BCBSC. ECF No. 37-2 at 8. He began working for the Baltimore City public school system as a teacher in August 1995, teaching Social Studies, Law, Government, and History. ECF No 1 ¶ 5. Over the course of his 23 years of employment with BCBSC, Plaintiff was never reprimanded or received any disciplinary actions. *Id.* ¶ 6. He was rated satisfactory or above every year in his annual performance evaluations. *Id.*

In the Fall of 2014, Plaintiff became one of four assistant principals at Edmonson High School[1]. *Id.* ¶ ¶ 7, 10. He oversaw curriculum and instruction, climate and culture, and facilities. ECF No 37-2 at 19. Plaintiff's duties included assisting the principal or school administrator by functioning as the instructional and operational leader in the planning, implementation and evaluation of instruction, student support, and building operations for the high school. *Id.* ¶ 8. Operations included "making sure that the building was operating in a safe manner for all stakeholders." ECF No. 37 at 2.

In August 2015, Ms. Muriel Cole-Webber took over as the new principal at Edmonson High School. ECF No. 1 ¶ 10; No. 37-2 at 20 ¶ 20. At the time, Plaintiff was the only male assistant principal at the school. ECF No. 1 ¶ 11. Plaintiff asserts in his Complaint that quickly after assuming her role as principal, Ms. Cole-Webber began ostracizing him. *Id.* ¶ 12. He states that

---

[1] Plaintiff's Complaint (ECF No. 1) states that Ms. Muriel Cole-Webber "took over at Mr. Jones's school, Westside High School." ECF No. 1 ¶ 10. However, in Plaintiff's deposition (ECF No. 37-2) Plaintiff never testified he worked at Westside High School. Plaintiff stated that in 2014, he began working as assistant principal at Edmonson High School and it was there that Ms. Cole-Webber became the principal in 2015. ECF No. 37-2 at 18-22.

she began making comments that he was "not part of her team" and that Plaintiff's presence at the school "was not desired." *Id.* According to Plaintiff, starting in early 2016, Ms. Cole-Webber assigned him specific work hours and instructed him to perform tasks not required of the other three female assistant principals. *Id.* ¶ 13, ECF No. 50-7 at 16. These tasks included but were not limited to: "performing daily inspections of all one-hundred bathrooms; accessing the roof of the school buildings to look for and gather any trash; and walking through each building to ascertain [what, if any,] repairs needed [to be] conducted." ECF No. 1. ¶ 13. These tasks were in addition to Plaintiff's regular administrative duties, requiring him to work longer hours than the other three assistant principals. *Id.*

Plaintiff repeatedly asked Ms. Cole-Webber for an explanation as to why he was subjected to this treatment. *Id.* ¶ 14. When he continuously failed to get a response, Plaintiff made numerous requests to meet with Ms. Cole-Webber's supervisors, Ms. Jacque Hayden and Mr. Darryl Kennedy. *Id.* ¶ 15. Plaintiff avers that Ms. Hayden sided with Ms. Cole-Webber without investigating the disparate treatment, leaving his concerns unaddressed and unresolved. *Id.* ¶ 16.

Due to the lack of intervention by his superiors, Plaintiff chose to take another course of action in February 2016. *Id.* ¶ 17. Plaintiff notified Ms. Cole-Webber and Ms. Hayden via email that he intended to file an EEOC complaint on the basis of gender discrimination. *Id.* Shortly after, in March 2016, Plaintiff requested vacation and was denied without an explanation by Ms. Cole-Webber. *Id.* ¶ 18. Around this time, Plaintiff learned that two of his female counterparts had their vacation approved by Ms. Cole-Webber. *Id.* ¶ 19. Plaintiff continued to file grievances complaining of discrimination but did not receive any responses. *Id.* ¶ 20.

On or about July 17, 2016, Plaintiff was notified by Ms. Hayden that he was being administratively transferred to New Era Academy. *Id.* ¶ 21. The transfer was made effective on

July 28, 2016 (ECF No. 1 ¶ 23) and he was replaced by a female assistant principle. *Id.* ¶ 24. Since no other staffing changes had been made to the administrative team, the school's assistant principals and principal were all women. *Id.* ¶ 25.

In November 2016, Plaintiff became severely depressed because of his working conditions. *Id.* ¶ 26. He sought support and treatment by the BCPS' Employee Assistance Program's doctor, Dr. Lawrence Fischel. *Id.* Based upon an order from his personal physician, Dr. Daniel Levy, Plaintiff also took a leave of absence until the end of November 2016. *Id.*

Upon Plaintiff's return on December 2, 2016, Ms. Hayden directed Plaintiff to only complete informal observations by teachers. *Id.* On December 5, 2016, Plaintiff asked Ms. Hayden for permission to resume the duties that were reflective of his job description. *Id.* ¶ 28. Ms. Hayden refused Plaintiff's request, responding that "she was confident that Mr. Jones's regular duties could be handled by other members of the team." *Id.* Plaintiff quickly became sick again and took another leave of absence from December 7, 2016 to January 2, 2017. *Id.* ¶ 29. On December 7, 2016, Plaintiff filed a complaint of gender discrimination with the EEOC. *Id.* ¶ 30. From December 2016 to the end of the school year, Plaintiff was required to work as a daily substitute teacher. *Id.* ¶ 31. In early February 2017, Plaintiff was told by Ms. Hayden that his duties as assistant principal would be changed. ECF No. 50-1 at 20. On February 14, 2017 Plaintiff was given an unsatisfactory "Second Conference Report for Performance Evaluation." ECF No. 1 ¶ 31. Prior to this, Plaintiff had not received a "first" annual evaluation for the 2016-2017 school year. *Id.* On February 24, 2017, Ms. Hayden placed Plaintiff on a corrective action plan. *Id.* ¶ 33. In March 2017, Plaintiff emailed an EEO Manager as well as the CEO of the Baltimore City Public School system and a Staff Investigator about his concerns of discrimination. *Id.* ¶ 34. He received no responses from any of the recipients. *Id.*

On June 1, 2017, Plaintiff was notified that he was going to be laid off. *Id.* ¶ 35. He tried to secure a new position as assistant principal at Dunbar High School and Achievement Academy High School. *Id.* ¶ 36. However, both jobs were later rescinded. *Id.* Plaintiff did receive a job offer later that month, as an assistant principal at Friendship Academy of Engineering and Technology. *Id.* ¶ 37. Even though Plaintiff had not expressed an interest to work at this school nor had he applied for the job, he accepted the position. *Id.* ¶¶ 37, 38. In October 2017, Plaintiff was advised by the principal of his school that he would be "surplused" and that he would be placed on a list awaiting future assignment due to the anticipated closure of the school. *Id.* ¶ 39, 40. Plaintiff was one of twelve male assistant principals that were deemed surplus employees. ECF No. 37-1 at 9. On June 30, 2018, BCPS permanently closed Friendship Academy of Engineering and Technology. ECF No. 1 ¶ 41.

On June 26, 2018, Plaintiff was advised that he would be assigned an available vacant position if he could not find and secure a new assistant principal's position. *Id.* ¶ 42. At the time, there were three assistant principal positions available. ECF No. 37-1 at 9. Plaintiff expressed an interest in working at National Academy Foundation as an assistant principal for the 2018-2019 school year. ECF No.1 ¶ 43. However, Plaintiff did not receive a job offer for this position. *Id.* ¶ 43. As a result, on August 29, 2018, Plaintiff was placed at Booker T. Washington Middle School as a teacher. *Id.* ¶ 43, 45. Plaintiff had no background in educating middle school students. *Id.* ¶ 45.

In his Complaint, Plaintiff states that as a result of this treatment he was embarrassed and humiliated and suffered substantial emotional distress. *Id.* ¶ 46. Plaintiff suffered from anxiety, crying spells, loss of appetite, depression, diminished self-esteem, and loss of sleep because of the

way he was treated. *Id.* Plaintiff received a Right to Sue letter from the EEOC on June 28, 2018. *Id.* ¶ 47. In March 2019, Plaintiff retired. ECF No. 50-1 at 3.

### DISCUSSION

**A.  Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co.*,

475 U.S. at 586. In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

### B.  Defendant's Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case for his discrimination and retaliation claims. Specifically, regarding the discrimination claims, Defendant contends that Plaintiff is unable to produce evidence supporting an inference of gender discrimination. ECF No. 37-1 at 8. Additionally, Defendant contends that there was a legitimate, non-retaliatory reason for its actions. Regarding the retaliation claim, Defendant asserts that Plaintiff "has failed to produce any evidence demonstrating that retaliation was the but-for cause of any alleged adverse employment actions by BCBSC." ECF No. 37-1 at 9.

### 1.  Title VII Discrimination Claim.

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex or national origin."  42 U.S.C. § 2000e-2(a)(1) (2018).  Plaintiffs may prove discrimination through "two avenues of proof": (1) direct or indirect evidence, or (2) the burden-shifting framework of *McDonnell Douglas*. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc)).  "It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by means of

the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Diamond v. Colonial Life &*
*Accident Ins. Co.*, 416 F.3d 310, 318 n.4 (4th Cir.2005)).

Regardless of which avenue a plaintiff chooses to proceed under, "[t]o prevail on a Title
VII claim, 'the existence of some adverse employment action is required.'" *Holland v. Wash.*
*Homes, Inc.*, 487 F.3d 208, 219 (4th Cir.2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*,
368 F.3d 371, 375 (4th Cir.2004)).  "An adverse employment action is a discriminatory act that
adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Westmoreland*
*v. Prince George's Cnty., Md.*, 876 F.Supp.2d 594, 604–05 (D.Md.2012) (citations and internal
quotation marks omitted). "[A]lthough actions short of termination may constitute an adverse
employment action within the meaning of [Title VII]. . . not everything that makes an employee
unhappy is an actionable adverse action."  *Settle v. Balt. Cnty.*, 34 F.Supp.2d 969, 989
(D.Md.1999) (quoting *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997))
(internal quotation marks omitted).

In this case, whether Plaintiff has presented a *prima facie* case of discrimination turns on
the existence of an adverse action cognizable under Title VII. *See Holland*, 487 F.3d at 219. In his
Complaint, Plaintiff alleges he suffered the following adverse employment actions: (1) comments
made by Ms. Cole-Webber expressing Plaintiff's presence at the school was not desired; (2) Ms.
Cole-Webber's denial of Plaintiff's vacation request; (3) the assignment of extra work
requirements; (4) interactions where Ms. Cole-Webber questioned his job performance in front of
others; (5) Ms. Cole-Webber's refusal to answer Plaintiff's emails; and (6) the fact Plaintiff only
received one performance evaluation from Ms. Cole-Webber instead of two. ECF No. 1 ¶ 12, 18,
19, 13; ECF No. 50-1 at 16; ECF No. 1 ¶14. The Court will address each employment action in
turn.

First, Plaintiff references comments made by Ms. Cole-Webber suggesting Plaintiff was unwanted at Edmonson High School. These statements cannot be considered adverse employment actions because Plaintiff is unable to offer any indication that the comments changed a term, condition, or benefit of his employment. *Westmoreland*, 876 F.Supp.2d at 604-05. Additionally, based on the evidence presented, Plaintiff cannot demonstrate how Ms. Cole-Webber's conduct constituted more than an irritation, inconvenience, or personality conflict. *See Burlington N. & S.F.R. Co. v. White,* 548 U.S. 53, 68 (2006) (opining that personality conflicts that generate antipathy as well as snubbing by supervisors or co-workers are not cognizable adverse actions under § 704(a)). Title VII does not protect from all workplace injustices and "petty slights, minor annoyances, and simple lack of good manners" do not constitute adverse actions. *Hinton v. Virginia Union University*, 185 F.Supp.3d 807, 831 (E.D.Va.2016) (citing *Burlington N. & S.F.R. Co.,* 548 U.S. at 68). Even if unfair and aggravating, Plaintiff cannot show that such instances had a direct impact on the terms of his employment.

Plaintiff next points to when Ms. Cole-Webber denied him his vacation request as evidence of a discriminatory adverse action. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc., v. Ellerth,* 524, U.S. 742, 761 (1998). Plaintiff does not offer evidence showing how the denial of his vacation request negatively impacted the conditions of his employment. Plaintiff testified that he cannot recall the specifics of the vacation request such as when he submitted it, where he was going, or the number of days he requested leave. ECF No. 37-3 at 26. Plaintiff also testified that does not know whether his vacation was denied because someone else's request had already been approved for the same dates. *Id*. at 27. Though Plaintiff expresses discontent over the fact his

9

female colleagues' vacation requests were approved, there is no indication in the record that it had a direct impact on the terms of his employment. Accordingly, as an isolated incident and without further evidence from Plaintiff showing a material change in his employment, Defendant's denial of Plaintiff's vacation request is not an adverse employment action.

Plaintiff's third allegation involves various job instructions and expectations provided by Ms. Cole-Webber. Plaintiff asserts that he was "assigned specific work hours" while his female colleagues were not and that these added duties required him to "work longer hours than the female assistant principals." ECF No. 1 ¶ 13, ECF No. 50-7 at 16, ECF No. 50 at 5.

Generally, changes in work assignments or duties do not constitute adverse employment decisions unless there is a decrease in salary or work hour changes. *Thorn v. Sebelius*, 766 F.Supp.2d 585, 589 (D.Md.2011) (internal citations omitted). Regarding an employee's change in work hours, this Court opined that additional work "can be a material difference in the terms and conditions of employment." *Id*. at 599. For example, "a salaried employee who is asked to work 10% more hours with no change in pay suffers more than a 9% hourly pay cut." *Id*.

In *Thorn,* similar to the instant case, Thorn filed a Title VII discrimination claim against his employer based on two incidences, one in 2003, the other in 2005. In 2003, Thorn was working as a patient appointment manager at the NIH Clinical Center when Thorn's supervisor moved Thorn's 6:00am to 2:30pm shift to 7:00am to 4:00pm. *Id*. at 590. Then in 2005, following a move to a decentralized scheduling system, Thorn claimed that his duties had been assigned "to other white and female employees" and that he received an email "remov[ing] him from his duties and responsibilities as patient appointment manager." *Id*. at 594. This Court ruled that neither of these instances amounted to adverse actions because Thorn had not presented evidence that they had a significant detrimental effect on the terms of his employment. *Id*. at 599.

Like in *Thorn*, Plaintiff here has not provided any evidence detailing how his new job assignments materially affected the terms of his employment. Plaintiff asserts that he was given specific work hours and that his added obligations required him to work longer than his female colleagues. However, Plaintiff offers no information as to how much overtime he worked or how often he had to stay late in order to complete the additional assignments specifically given by Ms. Cole-Webber. When asked what time his day would typically end, Plaintiff testified "anywhere, generally speaking, between 4:30 and 5 depending on what my assignments were. But if I had sports or a meeting or something else that was part of the responsibility, then it could be 8, 9, 10, or 11." ECF No. 37-2 at 28-29. According to Plaintiff, he would sometimes have administrative duties that required him to stay beyond the normal workday but had no issue with them since they were part of his job. *Id.* Plaintiff does not provide any additional information about these duties. Further, there are no examples in the record indicating when Ms. Cole-Webber's assignments rather than his administrative duties required Plaintiff to stay late.

As noted, to be considered an adverse action the assignment of additional duties must be so significant that they change the basic terms of employment. *Thorn*, 766 F.Supp.2d at 599. Plaintiff's complaints concerning the change in his work hours are too generalized to determine whether they changed the basic terms of employment. Plaintiff asserts he had to work longer hours but does not offer how many hours the new assignments added to his schedule. Without any information demonstrating the extent to which Plaintiff's work assignments created a material change to the terms of his employment, Ms. Cole-Webber's actions cannot constitute adverse employment actions according to *Thorn*. *Id.* at 599.

Plaintiff's fourth allegation is that Ms. Cole-Webber's negative comments to his co-workers about Plaintiff's job performance is an adverse action. This allegation is analogous to

Plaintiff's first. For the same reasons, it is not an adverse action because Plaintiff does not provide how the comments resulted in a tangible change to his employment status. Without additional evidence, Ms. Cole-Webber's comments are examples of the personality conflicts and "petty slights" not recognized as adverse actions under Title VII. *Hinton,* 185 F.Supp.3d at 831, *Burlington N. & S.F.R. Co.,* 548 U.S. at 68.

Plaintiff's fifth allegation of adverse employment action involves Ms. Cole-Webber's failure to respond to his emails concerning his allegedly disparate treatment. As explained, "an adverse action is a discriminatory act that adversely affects the terms, conditions, or benefits, of plaintiff's employment." *Westmoreland,* 876 F.Supp.2d at 604–05 (citations and internal quotation marks omitted). Here, Plaintiff is unable to show how Ms. Cole-Webber's failure to respond to his emails negatively affected his employment. Despite the lack of response, Plaintiff continued exercise his rights by filing grievances and ultimately filed an EEOC Complaint. ECF No. 1 ¶ 20, 30. Even assuming, *arguendo*, that Plaintiff produced evidence to support these facts, the failure to investigate a complaint of discrimination generally does not amount to an adverse action. *Lockheed Martin Corp. v. Balderrama*, 277 Md.App. 476, 509 (Md.Ct.Spec.App.2016).

Finally, Plaintiff's sixth allegation of adverse employment action stems from the fact that Ms. Cole-Webber gave him only one performance evaluation instead of the mandatory two. ECF No. 50-1 at 18. Once again, Plaintiff does not present evidence that this affected his employment in any way, nor does he allege that it created potential collateral consequences rising to the level of an adverse employment action. Performance evaluations constitute adverse employment actions "only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Thorn*, 766 F.Supp.2d at 598 (quoting *James,* 368 F.3d at 377). Plaintiff has not presented evidence demonstrating that the single evaluation had

a tangible effect on the terms or conditions of his employment. In fact, Plaintiff acknowledged that the evaluation he received was actually positive, rating him "superior on work performance." ECF No.50-1 at 18. Plaintiff is unable to demonstrate how being provided only a single evaluation was detrimental to his employment status or provide evidence that Defendant used the evaluation negatively. Therefore, Plaintiff's sixth allegation fails to rise to the level of an adverse employment action.

Even considering the facts most favorable to Plaintiff, there is insufficient evidence from which any reasonable jury could find that the incidents complained of were discriminatory adverse employment actions or that they were sufficiently severe or pervasive enough to alter the conditions of Plaintiff's employment. Accordingly, Plaintiff has not presented a *prima facie* case of gender discrimination and Defendant is entitled to judgment as a matter of law. Therefore, Defendant's Motion with respect to Count I is GRANTED.

2. Title VII Retaliation Claim.

Title VII retaliation claims are analogous to discrimination claims. *Yashenko v. Harrah's N.C. Casino Co. LLC,* 446 F.3d 541, 551 (4th Cir.2006). A plaintiff may succeed by either providing direct evidence of retaliation or by satisfying the *McDonnell Douglas* burden-shifting framework. *Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 318 (4th Cir. 2005). Under that framework, for a plaintiff to make a *prima facie* case of retaliation, they must demonstrate that "(1) [they] engaged in a protected activity; (2) [their] employer took a materially adverse employment action against [them]; and (3) there was a causal link between the two events." *Evans v. International Paper Company,* 936 F.3d 183, 195 (4th Cir.2019); *see Burlington N. & S.F.R. Co.,* 548 U.S. at 61-68 (redefining the second element to include "materially adverse action" instead of "adverse employment action").

Defendant contends that Plaintiff "has failed to produce any evidence demonstrating that retaliation was the but-for cause of any alleged adverse employment actions." ECF No.37-1 at 9. To grant Defendant's motion, the Court need only find that Plaintiff cannot prove at least one element of his claim. In this case, the inquiry turns primarily on the third factor, whether there was a causal link between Plaintiff's complaints and his transfer to Booker T. Washington.

Plaintiff satisfies the first element of his *prima facie* retaliation claim through his participation in protected activities. Voicing complaints to employers, using an employer's grievance procedures, or exercising one's Title VII rights constitute a protected activity. *Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir.1981). Plaintiff complained multiple times to his superiors about his treatment prior to filing an EEOC Complaint. Thus, Plaintiff's actions qualify him for Title VII protections.

Like a discrimination claim, the second prong of a *prima facie* retaliation claim requires plaintiffs to provide evidence they suffered an adverse employment action. The standard for an adverse employment action in a retaliation claim is more lenient than for a substantive discrimination claim. *Burlington N. & S.F.R. Co.*, 548 U.S. at 64. A plaintiff is required to show that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Evans,* 936 F.3d at 195 (internal citations omitted). The adverse action must also be "materially adverse" meaning it affects "a term, condition, or benefit of an individual's employment" but this is not necessary to be considered a Title VII violation. *Strothers v. Cty. of Laurel, Md.,* 895 F.3d 317, 327 (4th Cir.2018).  The Supreme Court added the "materiality" requirement to ensure only significant harms would be actionable. *Burlington N. & S.F.R. Co.,* 548 U.S. at 68-70. To make that assessment, "Courts should look at the particular circumstances of the alleged act of retaliation…[c]ontext matters." *Id.* at 69. (explaining that a

change in an employee's work schedule may make no difference to many but may matter enormously to a young mother with school-age children). Like a discrimination claim, Title VII does not protect plaintiffs from retaliation in the form of "petty slights, minor annoyances, and simple lack of good manners" only retaliatory actions that produce injury or harm. *Geist v. Gill/Kardash Partnership,* 671 F.Supp.2d 729, 738 (D.Md.2009) (internal citation omitted).

In Count II of his Complaint, Plaintiff argues that he was subjected to retaliatory adverse actions when "his duties were removed from him, he was transferred to a different school, and he was eventually removed as an assistant principal." ECF No. 1 ¶ 59. Plaintiff also raises issues in the facts of the Complaint which he later argues in his response are additional retaliatory actions. ECF No. 50-1 at 17-25. The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered. *Clawson v. FedEx Ground Package System, Inc.,* 451 F.Supp.2d 731, 734 (D.Md.2006). However, the power to decline consideration of such arguments is discretionary and courts are not precluded from considering such issues in appropriate circumstances. *Id.* The Court views the facts in a light most favorable to the Plaintiff and addresses such alleged adverse actions in the retaliation claim.

Plaintiff asserts the retaliation began after he complained to Defendant about the alleged workplace discrimination. ECF No. 1 ¶ 60. As a result of his complaints, Plaintiff claims he suffered the following retaliatory adverse actions: (1) Ms. Hayden and others ignored Plaintiff's complaints about his treatment in violation of Defendant's own policy; (2) Plaintiff received a negative evaluation and was placed on a corrective action plan; (3) at one point Plaintiff was stripped of his duties as assistant principal; (4) Plaintiff was transferred multiple times to other schools; and (5) Plaintiff was eventually demoted to a middle school teacher. ECF No. 50-1 at 17-25; ECF No. 1 ¶ 59. The Court will discuss each in turn.

Plaintiff first asserts that Ms. Hayden and others failed to notify the EEO Office and the Labor Relations Office of his complaints, ignoring the complaints in violation of Defendant's own policy. ECF No. 50-1 at 17. This allegation is similar to the allegation made in Plaintiff's discrimination claim concerning Ms. Cole-Webber's refusal to answer Plaintiff's emails. *Supra* at 8. As was the case in the discrimination claim, Plaintiff here does not provide enough evidence demonstrating how the lack of response tangibly affected the terms of his employment. Moreover, Plaintiff is unable to show that he was significantly harmed as a result of Ms. Hayden's and others' failure to notify the EEO and Labor Relations Offices. Even assuming *arguendo*, that Plaintiff presented evidence supporting this claim, the failure to conduct a full investigation into a complaint of discrimination generally does not amount to an adverse action. *Lockheed Martin Corp.,* 277 Md.App. at 509 (internal citations omitted). "Failure to investigate an internal complaint cannot be considered retaliatory [because it] leaves an employee no worse off than before the complaint was filed. *Id.* (citing *Daniels v. United Parcel Serv., Inc.*,701 F.3d 620, 640 (10th Cir.2012)).

Plaintiff next points to his receipt of a negative performance evaluation and placement on a corrective action plan as evidence of retaliation. As discussed*,* a negative performance evaluation alone is not an adverse employment action because it does not materially alter the terms, conditions, or benefits of employment. *James,* 368 F.3d at 377. Even under the "lower bar" applicable to Title VII retaliation claims, none of the following constitutes an adverse employment action: "failing to issue a performance appraisal; moving an employee to an inferior office…issuing a personal improvement plan, an attendance warning, a verbal reprimand, a formal letter of reprimand, or a proposed termination." *Wonasue v. University of Maryland Alumni Ass'n*, 984 F.Supp.2d 480, 492 (D.Md.2013) (internal citations omitted).

16

Plaintiff also cannot establish that his placement on the corrective action plan caused him to suffer any material consequences in his employment. The mere placement on a corrective action plan, without evidence of direct economic harm (such as loss of salary, benefits, position, or promotional opportunities) does not constitute an adverse employment action. *Lockheed Martin Corp.,* 277 Md.App. at 510. Here, Plaintiff presents no evidence that he suffered any change in pay, hours, or responsibility as a result of the negative performance evaluation and corrective action plan. Additionally, the issuance of a "personal improvement plan" does not constitute an adverse action in a retaliation claim. *Wonasue,* 984 F.Supp.2d at 492. Thus, Defendant's issuance of a negative evaluation and corrective action plan is not a retaliatory adverse action.

Plaintiff's third allegation involves his change in job expectations while at New Era Academy. ECF No. 1 ¶ 27. Plaintiff asserts that after he returned from a leave of absence December 2, 2016, he was directed to only complete informal observations by teachers. ECF No. 1 ¶ 27. As noted, an adverse action in a retaliation claim means that the employer's actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Evans,* 936 F.3d at 195 (internal citation omitted). However, Plaintiff was not dissuaded from making a charge of discrimination. Plaintiff states he was informed of his new requirements on December 2 and then acknowledges that he filed a complaint for gender discrimination with the EEOC on December 7. ECF No. 1 ¶ 27, 30. Thus, Plaintiff cannot establish that this change in responsibilities amounted to an adverse action because rather than dissuade him from filing a complaint, the facts indicate the act encouraged Plaintiff to do so.

Plaintiff's fourth allegation involves the three instances between July 2016 and June 2018 when Plaintiff was transferred to different schools. Plaintiff was first transferred in July 2016 to New Era Academy, alleging that this transfer was in retaliation for his filing gender discrimination

complaints. ECF No. 1 ¶ 22-24. Plaintiff's second transfer occurred in June 2017 where he worked at Friendship Academy of Engineering and Technology for the 2017-2018 school year. ECF No. 1 ¶ 37. The third transfer was August 29, 2018 to Booker T. Washington Middle School. ECF No. 1 ¶ 45. The first two transfers are not adverse employment actions because Plaintiff does not provide evidence showing that the new positions materially affected any part of his employment.

As mentioned, "tangible employment actions like…failing to promote or a decision causing a significant change in benefits and responsibilities trigger an employer's Title VII liability." *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999). Both positions Plaintiff took in July 2016 and June 2017 were assistant principal positions and Plaintiff received a raise when he was transferred in July 2016. ECF No. 37-1 at 2. During this time, Plaintiff continued to reach out to his employers and file grievances about his treatment. ECF No. 1 ¶ ¶ 30, 31. Accordingly, because Plaintiff was not dissuaded from filing complaints after his transfers and cannot show how the first two transfers caused a material change to his employment conditions, Plaintiffs fourth adverse action allegation fails.

At first glance Plaintiff appears to provide evidence showing he suffered a materially adverse employment action as a result of his third transfer. A decrease in pay, job title, and level of responsibility are evidence of a significant detriment to one's employment. *Holland,* 487 F.3d at 219 (internal citation omitted). After being surplused in June 2018, Plaintiff was unable to secure an assistant principal position and on August 29, 2018 was assigned a middle school teaching position at Booker T. Washington. ECF No. 1 ¶ 45. With the new job title, Plaintiff suffered a nearly $35,000 salary cut. ECF No. 50-1 at 8. Here, Plaintiff experienced a material change in his employment as his salary was lowered and he went from an assistant principal position to a middle

school teacher, which brought with it completely different responsibilities. In order to prove a *prima facie* case of retaliation, Plaintiff must also present evidence of causation.

A plaintiff can satisfy the causation element either (1) by showing close temporal proximity between the protected activity and the adverse employment action or (2) by the court inferring events that might have occurred during the intervening period for other evidence of retaliatory animus. *Lettieri v. Equant Inc*., 478 F.3d 640, 650 (4th Cir.2007).

Plaintiff cannot rely on temporal proximity to establish a causal connection between his EEOC complaint and demotion to Booker T. Washington because almost two years passed between the two events. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (finding that an employer's actions taken 20 months later cannot suggest causality). In cases where there is insufficient temporal proximity between a protected and retaliatory action to create an inference of causation, courts may look to events occurring during this intervening period for other evidence of retaliatory animus. *Lettieri,* 478 F.3d at 650. In *Lettieri*, during the seven months between filing a complaint of gender discrimination and her termination, the plaintiff was stripped of "significant job responsibilities" including reducing her supervisory responsibilities and the ability to meet with clients. *Id.* at 651. Here, Plaintiff has presented evidence demonstrating similar occurrences. Plaintiff filed his EEOC complaint in December 2017. ECF No. 1 ¶ 30. That month he was instructed to serve only as a substitute teacher for the rest of the year and received an email in February stating his duties as assistant principal would be changed. ECF No. 1 ¶ 32; ECF No. 50-1 at 19. In the months following the filing of his complaint, Plaintiff received negative evaluations, was placed on a corrective action plan, and was laid off twice. ECF No. 1 ¶ 32, 33, 35, 39. Though individually these do not rise to the level of actionable adverse employment actions, collectively they convey an inference of retaliatory animus. Accordingly, Plaintiff has alleged facts for a jury

to determine whether Defendant's decision to demote him was in retaliation to the numerous complaints Plaintiff made in the intervening time period.

Because Plaintiff has made a *prima facie* case for retaliation, the burden shifts to Defendant to proffer a "legitimate, non-retaliatory reason" for the adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-803 (1973). Defendant argues that its decision to place Plaintiff at Booker T. Washington was based on a Plaintiff's qualifications. *See* ECF No. 37-3 at 2. In response, Plaintiff suggests that Defendant's proffered non-retaliatory reason is pretextual because Defendant could have placed Plaintiff as an assistant principal elsewhere. ECF No. 50-1 at 22. Defendant acknowledges that at the time Plaintiff was placed at Booker T. Washington there were three vacant assistant principal positions. ECF No. 37-1 at 9. However, Plaintiff stated that never in his twenty-three-year teaching career had he taught middle school. ECF No. 1 ¶ 45; ECF No. 50-1 at 3. This raises a question of whether Plaintiff was qualified to fill that position and why Plaintiff was selected.

Plaintiff's *prima facie* retaliation claim is supported by evidence establishing he engaged in a protected activity and suffered an adverse employment action under an inference of retaliatory animus. Considering Defendant's argument, there exists a genuine issue of material fact as to whether Defendant's proffered justifications were its true reasons for demoting Plaintiff. Further, a reasonable jury could conclude that Defendant's actual reason for demoting Plaintiff was to retaliate against him for complaining about his disparate treatment.

Accordingly, Defendant's Motion as to Plaintiff's claim of retaliation in Count II of his Complaint will be DENIED.

3.   <u>State Discrimination Claim.</u>

Plaintiff also alleges Defendant discriminated against him in violation of Md. Code Ann., State Gov't § 20-606(a) and (f). Plaintiff asserts that his gender and complaints regarding discrimination were a motivating factor in Defendant creating a hostile work environment. Md. Code Ann., State Gov't § 20-606(a) and (f) are essentially identical to Title VII. Under Maryland law, an employer may not discriminate against an individual on the basis of sex nor may an employer discriminate or retaliate against its employees because they oppose a practice or participated in any manner of investigation. *See* Md. Code Ann., State Gov't § 20-606(a) and (f), respectively. Because of the similarity of the laws, Maryland courts use the same burden shifting criteria applied in Federal Title VII decisions. *See Muse-Ariyoh v. Board of Educ. Of Prince George's Cty.,* 235 Md.App. 221, 242 (Md.Ct.Spec.App. 2017). Therefore, based on the analysis *supra* that Plaintiff did not suffer adverse employment actions under a Title VII discrimination claim, Plaintiff's allegations do not support a state claim of discrimination.

C<small>ONCLUSION</small>

For the reasons stated herein, the Court finds that there are genuine issues of material fact as to whether Defendant retaliated against Plaintiff for filing complaints of discrimination in violation of Title VII. The Court finds there are no genuine issues of material fact as to the remaining federal and state discrimination claims. Therefore, the Motion for Summary Judgment as to Count I and Count III is GRANTED.  Defendant's Motion as to Count II is DENIED. A separate order will follow.

Date:   January 14, 2021                                            /s/
                                                    A.  David Copperthite
                                                    United States Magistrate Judge